IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

CHESTER BRANTLEY,            )
                             )
        Plaintiff,            )
                             )
v.                           )      No. 13-2512-T
                             )
COMMISSIONER OF              )
SOCIAL SECURITY,             )
                             )
        Defendant.            )

---

ORDER AFFIRMING DECISION OF COMMISSIONER

---

Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying his applications for disability insurance benefits under Title II of the Social Security Act ("the Act") and for supplemental security income ("SSI") benefits based on disability under the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on February 8, 2012.

On March 8, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff then filed this action, requesting reversal of the decision of the Commissioner. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. See Lindsley v. Commissioner, 560 F.3d 601, 604–08 (6th Cir. 2009); Kyle v. Commissioner, 609 F.3d 847, 854 (6th Cir. 2010).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on January 15, 1977, and was thirty-six years old at the time of the hearing. He has a GED and past relevant work as a forklift operator. R. 277. He is allegedly disabled due to cognitive brain trauma sustained on July 27, 2003. His allegedly disabling symptoms include shortness of breath, poor mental status, stroke, severe brain damage, and pain in his legs and arms. R. 164, 188. The Social Security Administration found Plaintiff

to be disabled from July 2003 through March 2008, when his benefits were terminated due to medical improvement. The termination was upheld by an ALJ in February 2010.

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements of the Act through March 31, 2013; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: seizure disorder, obesity, and organic mental disorder; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to lift fifty pounds occasionally and twenty-five pounds frequently and stand, walk, and sit six hours in an eight hour workday, while avoiding work around hazards, moving machinery and work heights; mentally, despite the limitations imposed by his mental disorder, he remains capable of understanding, remembering, and carrying out simple one-two step job instructions and adapting to gradual changes in the work place; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(a)(4); Howard v. Commissioner, 276 F.3d 235, 238 (6th Cir. 2002). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis

proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, there is a substantial number of jobs that exist in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. He specifically complains that the reports of the consultative examiners were flawed because the examiners did not review his complete medical records. He also argues that the ALJ erred in finding that he could perform other work at step five because the hypotheticals she posed to the vocational expert did not reflect his mental limitations. Plaintiff's arguments are not persuasive.

Barry R. Siegel, M.D., conducted a consultative physical examination on May 5, 2010, R. 277-79, and Edward Amos, Ph.D., conducted one on June 8, 2010. R. 280-83. Dr. Siegel noted that no objective medical information was supplied, R. 277, and Dr. Amos stated that the only information provided to him was Dr. Siegel's report. R. 280. Dr. Siegel and Dr. Amos based their opinions on their interviews with Plaintiff and the results of diagnostic testing.

The regulations provide that if the agency arranges for a consultative examination, it will "give the examiner any necessary background information about [the claimant's] condition." See 20 C.F.R. §§ 404.1517, 416.917. However, this provision does not mandate that the agency give the examiner access to the claimant's medical records. See, e.g., Genovese v. Astrue, 2012 WL 4960355, at *18 (E.D. N.Y. Oct. 17, 2012) (§§ 404.1517 and 416.917 do not require the agency to provide an examiner with claimant's medical records);

Hadley v. Astrue, 2010 WL 3386587, at *16 (E.D. Wis. Aug. 26, 2010) (the claimant failed to show that reversal was required when the agency failed to provide extant medical records). Accordingly, there was not requirement for Dr. Siegel and Dr. Amos to review Plaintiff's medical records prior to interviewing him and administering tests, and Plaintiff has failed to explain how their opinions would have been different and/or favorable to him if they had reviewed his earlier medical records.

Additionally, although Dr. Siegel and Dr. Amos did not review Plaintiff's prior medical records, the ALJ reviewed the records concerning Plaintiff's 2003 coma, and her decision includes a discussion of Plaintiff's prior medical records. The ALJ also reviewed the February 2010 ALJ decision, which concluded that medical improvement occurred as of March 31, 2008. R. 12, 21-22, 56-68. Therefore, Plaintiff's argument concerning his medical records is without merit.

Dr. Siegel's report shows that, despite Plaintiff's poor memory, he was able to recount his history of seizures, including the coma he endured several years before. R. 277. Plaintiff reported that he believed it had been at least a year since his last seizure, his occasional headache was alleviated with Ibuprofen, and he had history of hypertension. R. 277. Plaintiff also related his work history, described his daily activities, and identified the medications that he was taking. R. 277. Plaintiff further reported occasional heart fluttering and occasional pain of his left ankle, left dorsal forearm, and elbow and said that he used to have pain in his right arm. R. 278. Based on the examination, Dr. Siegel assessed a history of cognitive

impairment and mild arthritis of the left ankle and foot, R. 278, and concluded that Plaintiff had no impairment-related physical limitations. R. 279.

Dr. Amos administered the Wechsler Adult Intelligence Scale-III Edition, which revealed that Plaintiff's overall intellectual functioning was several standard deviations below average. Plaintiff's score fell in the mildly mentally retarded range although Plaintiff did well on the measure of immediate concentration. R. 282. Dr. Amos also administered the Wide Range Achievement Test-4 Edition, the results of which showed that Plaintiff was functioning at basically a fifth-grade level. R. 282-83. Dr. Amos's diagnostic impression included cognitive disorder, not otherwise specified, and status post neurological syndrome, seizure disorder. R. 283. He gave Plaintiff a Global Assessment of Functioning ("GAF") score of 50. R. 283. Dr. Amos opined that Plaintiff had difficulty with problem solving and carrying out step-by-step activities, but he had no major deficits from an emotional standpoint. R. 283.

Because it was supported by the longitudinal record, the ALJ gave substantial weight to Dr. Amos's opinion that Plaintiff would only have difficulty with problem solving and carrying out step-by-step activities. The ALJ gave very little weight to Dr. Amos's GAF score, finding that it was inconsistent with Plaintiff's level of adaptive functioning. The ALJ gave somewhat less weight to Dr. Siegel's opinion that Plaintiff had no impairment-related physical limitations because Dr. Siegel seemingly ignored Plaintiff's seizure disorder. Those opinions constitute substantial evidence to support the ALJ's residual functional capacity determination.

Additionally, the ALJ adopted the previous ALJ's findings regarding Plaintiff's physical limitations. See Acquiescence Ruling (AR) 98-3(6), 63 Fed. Reg. 29,770 (June 1, 1998); AR 98-4(6), 63 Fed. Reg. 29,771 (June 1, 1998); Drummond v. Commissioner, 126 F.3d 837 (6th Cir. 1997); Dennard v. Secretary, 907 F.2d 598, 600 (6th Cir. 1990).

The ALJ also considered Plaintiff's activities of daily living. Plaintiff was capable of attending to personal hygiene and grooming, preparing simple meals, doing laundry and household chores, ironing, driving short distances, shopping for groceries, cleaning the bathroom, and washing dishes. R. 35, 184, 199-200, 281. Plaintiff also socialized with friends, visited relatives, talked on the phone, played video games, and attended church regularly. R. 198, 201, 281, 842-43.

When evaluating a claimant's subjective complaints, an ALJ must consider, in addition to objective medical evidence and Plaintiff's work record, any evidence relating to Plaintiff's daily activities; duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. See 20 C.F.R. §§ 404.1529, 416.929. Here, the ALJ considered Plaintiff's testimony, medical and opinion evidence, and inconsistencies between his allegations and the evidence contained in the record and found that Plaintiff's complaints were not entirely credible.

For example, there was evidence that Plaintiff had malingered at his psychological evaluations, including those in May 2006 and February 2008. R. 61-62. In January 2008, Dan Murphy, Ph.D., considered Plaintiff's credibility to be fair to questionable. R. 62. Although

8

Plaintiff claimed that he had pain in his wrist, head, chest, and eye, he never mentioned those problems to any treating source. R. 183. Furthermore, a chest x-ray revealed no abnormalities, and a left wrist x-ray was normal. R. 278. Plaintiff also complained of ankle pain and muscle cramps in his arms and legs. R. 20-21, 41-42. X-rays of his feet, however, revealed no evidence of fracture or dislocation, with preserved joint spaced, normal alignment, and unremarkable soft tissues. R. 20-21, 278. A left ankle x-ray was essentially normal. R. 21, 278. Plaintiff testified that he still required anticonvulsant medication, but he failed to list any as a current medication, R. 43, 235, 365, and records show that Plaintiff's seizure disorder was resolved, and he no longer needed seizure medication. R. 321, 324. These inconsistencies support the ALJ's credibility determination.

It is the ALJ's responsibility to determine residual functional capacity based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of his limitations. See Anderson v. Shalala, 51 F.3d 777 (8th Cir. 1995); 20 C.F.R. §§ 416.945(a) & 416.946. Here, the ALJ considered all of the evidence in the record and adequately explained the basis for her residual functional capacity finding. As the ALJ's residual functional capacity was within the "zone of choice" supported by substantial evidence, her finding is upheld. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

When a claimant's vocational characteristics coincide with the factors of a rule in the grids, the existence of jobs in the national economy is established, and the claimant is considered not disabled. See 20 C.F.R. §§ 404.1569, 404.1569a(b), 416.969, 416.969a(b);

20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b); Heckler v. Campbell, 461 U.S. 458, 461-62, 470 (1983); Kimbrough v. Secretary, 801 F.2d 794, 796 (6th Cir. 1986). If the grids cannot be used to direct a finding of disabled or not disabled, as here, because of the claimant's nonexertional limitations, they may be used as a framework for the decision-making process. See 20 C.F.R. §§ 404.1569, 404.1569a(d), 416.969, 416.969a(d); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2).

The Commissioner met her burden at step five by eliciting the testimony of a vocational expert. The ALJ's hypothetical questions included all relevant vocational information that pertained to Plaintiff, including the limitations that the ALJ found in her assessment of Plaintiff's residual functional capacity. R. 49-51. The vocational expert identified examples of jobs that an individual with Plaintiff's vocational characteristics could perform, which the ALJ included in her decision. Because the vocational expert's testimony was in response to hypothetical questions that set forth all the reasonable limitations Plaintiff had on his ability to work, the ALJ properly relied on that testimony. See 20 C.F.R. §§ 404.1529, 416.929; Smith v. Halter, 307 F.3d 377, 378 (6th Cir. 2001) (A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.) Based on vocational expert testimony, the ALJ found that Plaintiff could perform various jobs within the medium level of work activity such as sorter and housekeeper.

Because there is substantial evidence in the record supporting the Commissioner's decision denying Plaintiff's applications for benefits, the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE